IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 21, 2010

## WILLIAM A. HAWKINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sullivan County**
**No. C52,695     R. Jerry Beck, Judge**

**No. E2010-00795-CCA-R3-PC - Filed January 4, 2011**

The petitioner, William A. Hawkins, aggrieved by his Sullivan County jury conviction of premeditated first degree murder for which he received a sentence of life imprisonment, filed a petition for post-conviction relief alleging that his conviction was the product of ineffective assistance of counsel and other constitutional deprivations. Following the appointment of counsel, amendment of the petition, and an evidentiary hearing, the trial court denied relief. On appeal, the petitioner argues that the trial court erred in denying him relief. Discerning no error, we affirm the order of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Katherine L. Tranum, Kingsport, Tennessee, for the appellant, William A. Hawkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Sullivan County jury convicted the petitioner of the April 2002 premeditated first degree murder of Roy Vittatoe. The petitioner received a sentence of life imprisonment. This court affirmed the conviction and sentence on direct appeal. *See State v. William A. Hawkins*, No. E2004-01761-CCA-R3-CD (Tenn. Crim. App., Knoxville, Nov. 4, 2005). The petitioner timely filed a pro se petition for post-conviction relief. Following the appointment of counsel, amendment of the petition, and a full evidentiary hearing, the trial court found that the petitioner had failed to present clear and convincing evidence to establish his claims

for relief. Accordingly, the trial court denied post-conviction relief, and this timely appeal followed.

The facts of the offense are detailed in this court's direct appeal opinion. *See Hawkins*, slip op. at 1-11. In summary, the evidence at trial showed that the victim and the petitioner were friends who had recently had an altercation concerning the petitioner's girlfriend. On April 20, 2002, the petitioner asked Chastity Lee Gentry and Mark Gentry to drive him to the victim's home. He instructed the couple to wait for him at a nearby church.

> After approximately five minutes, the [petitioner] . . . returned to the Gentrys' van. Mrs. Gentry noticed that the [petitioner] had blood on his face, and, when she asked him about it, he told her that he and the victim had gotten into a fight. The [petitioner] also told her that he had left the victim for dead. He described the scene as "gruesome as hell," and he said that he was glad she and Mr. Gentry did not see it. . . . The [petitioner] told the Gentrys that the victim and his brother "had done something to [the petitioner's girlfriend] in front of her children."

*Id.* at 2. The couple and the petitioner stopped at a nearby gas station where Mrs. Gentry reported seeing the petitioner "throw something in a dumpster and noticed he was no longer wearing socks or shoes." *Id.* Mrs. Gentry also recalled that the petitioner "had blood on his arm and all over his shorts." *Id.* The Gentrys drove the petitioner to the home of his sister, Judy Garrett. Judy Garrett found the defendant's bloody shorts and, after hearing news of the victim's death, placed the shorts in a duffel bag. Ultimately, she delivered the bloody shorts to investigators after the petitioner's arrest for the victim's murder. Following a waiver of his *Miranda* rights, the petitioner confessed to killing the victim but claimed it occurred in self-defense after the victim "began calling him derogatory names" and hit him while "armed with a gun." The petitioner claimed that he picked up a stick and beat the victim in the head "when the victim swung the gun" at him. At trial, the petitioner testified consistently with his statement alleging self-defense. He admitted telling his sister that "he had killed the victim because he was bored," but he maintained that he had said that sarcastically. *Id.* at 11.

The petitioner testified at the post-conviction evidentiary hearing that trial counsel performed deficiently by failing to locate and present certain witnesses, by failing to seek suppression of his statement to police based upon his alleged intoxication at the time of his statement, by failing to seek suppression of the bloody shorts based upon an alleged illegal search of his cellular telephone, by failing to impeach the Gentrys regarding certain

inconsistent statements made by Mr. Gentry, and by failing to present the expert testimony of Doctor Charlton Stanley concerning the petitioner's ability to form the mens rea to rebut evidence of premeditation presented by the State. As we will discuss further, much of the petitioner's testimony was notably conclusory and offered no evidence of prejudice stemming from these alleged deficiencies.

The petitioner also presented the testimony of Captain Joseph Strickler of the Sullivan County Sheriff's Office (SCSO) in support of his allegation that trial counsel failed to seek suppression of his statement to police or to cross-examine effectively at trial the law enforcement witnesses. Captain Strickler testified that the petitioner told the police that he had consumed half a case of beer and 20 Lortabs on the day of his statement. He testified, however, that the petitioner was not intoxicated when he waived his rights and gave his statement. Captain Strickler also explained that he took detailed notes of the petitioner's demeanor and actions during the statement, rather than the substance of the statement, and explained that any differences in his notes and the defendant's statements were the result of the different purpose underlying his note-taking. He reiterated that the petitioner showed no indicia of intoxication and was able to respond to all questions appropriately during his interview.

Edward Lynn Cardwell testified that he knew the victim and the petitioner from jail. He recalled witnessing an altercation between the victim and the petitioner after which the victim offered anyone "five packs of tobacco" to "put [the petitioner] down." He recalled that he had spoken with trial counsel and conveyed this information to him prior to the petitioner's trial, but he had not been subpoenaed to testify. Mr. Cardwell also conceded that he had never seen the victim act violently.

Doctor Charlton Stanley, a forensic psychologist, testified that he performed a forensic evaluation of the petitioner and determined that the petitioner "probably acted on impulse rather than premeditation" when he killed the victim. He admitted that he was unaware of the animosity between the petitioner and the victim or of the petitioner's disposal of items following the murder. Doctor Stanley also testified that the petitioner reported that he had consumed between 16 and 20 Xanax on the day of the murder. Doctor Stanley, however, did not believe that the petitioner had actually taken that much Xanax. Doctor Stanley said that he was prepared to testify at trial but was never asked to do so by trial counsel.

The State presented the testimony of SCSO Major Reece Christian who took the petitioner's statement at his arrest on April 24. Major Christian said that the petitioner reported drinking half a case of beer and taking about 20 Lortabs that day but that he did not appear intoxicated. Major Christian also noted the differences between the petitioner's

statement and Captain Strickler's notes. He explained that Captain Strickler's notes naturally contained different information because they were taken to record the petitioner's demeanor during the interview.

Penny Tester, the health administrator with the SCSO, reviewed the petitioner's medical records from his arrest which noted the petitioner's report of consuming beer and Lortabs. The records also noted, however, that the petitioner did not appear to be intoxicated and did not require any detoxification treatment while at the jail. The petitioner's health records also revealed that the petitioner was taking one Valium, three times daily, at the time of trial to treat symptoms of anxiety.

Trial counsel testified that he and his office's investigator went to the crime scene and interviewed all relevant witnesses. Trial counsel said that the petitioner never asked him to interview Mike Johnson in an effort to establish the petitioner's drug-impaired condition on the day of the murder. He testified that the petitioner did not ask him to call the Gentrys or any other witnesses at the preliminary hearing. He explained that he generally would not call witnesses at a preliminary hearing because the nature of a preliminary hearing is only to determine probable cause that the offense was committed by a defendant. Regarding the petitioner's allegation that trial counsel failed to interview the Gentrys, trial counsel testified that he made several attempts to talk to the Gentrys but that they refused to speak with him. Regarding other nonspecific witnesses that the petitioner claimed trial counsel refused to call as witnesses, trial counsel testified that he would never call witnesses "unless [he had] some idea that they're going to help [his] client." Trial counsel specifically recalled that he "had no reason to believe . . . that Mr. Gentry would be any help" to the case.

Trial counsel acknowledged that he did not file a motion to suppress the petitioner's statement, because, he explained, he wanted to keep the statement in evidence as a manner of presenting the petitioner's version of the events to the jury. He also determined that there was no basis to suppress the statement. He did recall, however, cross-examining Major Christian regarding the petitioner's alleged intoxication at the time of his statement. He indicated that he spoke to the petitioner's sisters several times. He specifically discussed with the sisters the manner in which the police received the bloody shorts and determined that there was no basis to seek suppression of the shorts.

Trial counsel stated that he did not initially intend to call the petitioner to testify. When the trial court excluded the recordings of jail telephone conversations in which the victim indicated some animosity toward the petitioner, however, trial counsel had no choice but to call the petitioner to testify. Trial counsel recalled that he and the petitioner discussed his testimony over a weekend during the trial and that the petitioner testified on a Monday morning. Trial counsel said that, although the jail recordings were excluded, several

witnesses testified concerning the victim's animosity toward the defendant.

Trial counsel testified that there was no basis to seek an independent pathologist because the petitioner had admitted to the offense, the evidence was very clear that the victim suffered a brutal attack, and the petitioner had little or no injuries from the encounter with the victim. Trial counsel also stated that he decided not to call Doctor Stanley because any evidence showing that the petitioner was unable to form the requisite mens rea would have been inconsistent with the defense theory of self-defense. Trial counsel remarked that there "wasn't much doubt that [the petitioner] had killed" the victim and that the main obstacle to their self-defense theory was whether the petitioner's response exceeded that necessary to defend himself.

In a detailed and thorough order, the trial court found that there was no basis to suppress the petitioner's statement to police and that trial counsel did not perform deficiently by not filing a motion to suppress. The trial court found that any issue regarding the State's preservation of the victim's camper was previously determined on direct appeal. The trial court also found that the petitioner had failed to present any "credible proof" that the police searched his cell phone or that any alleged search led to the discovery of any evidence. The trial court found that any issue regarding the admission of the jail recordings was previously determined on direct appeal and that there was no proof of deficient performance which arose from that issue. Regarding the allegation that trial counsel failed to call witnesses at the preliminary hearing, the trial court found that trial counsel had effectively examined witnesses at the preliminary hearing and that the petitioner had failed to establish any prejudice from trial counsel's failure to call witnesses on the petitioner's behalf. Regarding the remaining myriad issues concerning trial counsel's locating and presenting witnesses, presenting experts, cross-examining the State's witnesses, and filing pretrial motions, the trial court accredited the testimony of trial counsel and found that the petitioner had failed to establish his claims by clear and convincing evidence. Accordingly, the trial court denied post-conviction relief.

On appeal, the petitioner raises four specific claims attacking his conviction for first degree murder: (1) that trial counsel committed ineffective assistance, (2) that his statement to police was obtained in violation of his Fifth Amendment rights, (3) that the State withheld exculpatory information from him by not informing counsel of the existence of the victim's camper, and (4) that his bloody shorts were obtained through an unconstitutional search of his cellular telephone. The State responds that the petitioner failed to establish his claim of ineffective assistance of counsel and that the trial court properly denied relief. Initially, we note that the petitioner's substantive constitutional claims concerning his statement, the camper, and his shorts have all either been previously determined or are waived. *See* T.C.A. § 40-30-106(g), (h) (2006). Therefore, we shall address these claims,

as did the State, to the extent that each may be applicable to the petitioner's remaining ineffective assistance of counsel claim.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668 , 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The record supports the post-conviction court's findings of fact. Inasmuch as the petitioner attempted to raise constitutional issues concerning his statement, the camper, and his bloody shorts, these issues were all previously determined on direct appeal adversely to the petitioner. *See Hawkins*, slip op. at 14-21. Accordingly, he failed to establish any prejudice to support his allegations of ineffective assistance of counsel concerning these specific issues. Furthermore, we agree with the trial court's findings concerning the remaining allegations of ineffective assistance of counsel. As noted previously, much of the petitioner's testimony consisted only of bare conclusory allegations. Specifically concerning trial counsel's failure to interview or call witnesses, the petitioner failed to present any testimony from these alleged witnesses at the evidentiary hearing in order to establish his claims. A post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness to the post-conviction court; a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Thus, the petitioner failed to establish his allegation of ineffective assistance of counsel. Accordingly, the order of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE